United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL BLANCHARD,<br>　　　　Plaintiff,<br>　　v.<br>LAURA GARNETTE, et al.,<br>　　　　Defendants. | Case No. 5:15-cv-01407-EJD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. Respondent filed an answer on the merits (Dkt. No. 13) and Petitioner filed a traverse (Dkt. No. 18). For the reasons set forth below, the petition for a writ of habeas corpus is DENIED.

I. **BACKGROUND**

On January 13, 2012, a jury found Petitioner guilty of one count of attempted criminal threat (Cal. Penal Code §§ 422, 664) and two counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)). He was placed on probation for three years and ordered to serve a one-year term in county jail as a condition of probation. Petitioner's probationary term expired in March 2015.

On January 23, 2014, the California Court of Appeal, Sixth Appellate District, affirmed the judgment. Dkt. No. 15-12. The California Supreme Court denied review on April 9, 2014. Dkt. No. 15-14.

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
1

A.  **Statement of Facts**

The California Court of Appeal summarized the facts of the case as follows:

*A. Incident at Brittania Arms*

On April 4, 2010, Tiffani Sturges was at the Brittania Arms on Almaden Expressway. She sat at the bar while waiting for a friend. Defendant came over and sat near Sturges, then struck up a conversation with her.

During their conversation, defendant claimed he was a social worker who made $80,000 per year. Defendant got angry when Sturges told him she did not believe he made that much money. He then told her, "you need to, like, suck my dick, or I'm going to slit your throat." Sturges "kind of laughed" and responded, "No, I'm not." Defendant said, "I can make you." Sturges "didn't think he was serious" and told him, "You're ridiculous."

Defendant repeated his threat, saying, "I'm going to follow you home and I'm going to make you suck my dick and I am going to slit your throat." Sturges responded, "You don't know where I live." Defendant said, "I do know where you live. I know where your family lives."

Defendant also told Sturges, "I have a knife." Sturges responded, "Oh, really?" Defendant then took out a Leatherman multi-purpose tool, held it underneath the bar, and opened the knife implement. Sturges was "stunned." Defendant repeated his threat. Sturges told him, "don't threaten me," saying she had "cops" in her family. Defendant replied, "I don't care. I am a Hell's Angel."

Sturges felt "pretty terrified," but she did not yell out for help. She was "in shock," and she thought defendant might respond by stabbing her. She did not try to leave the bar, fearing defendant might follow her home as he had threatened. Instead, she tried to think of a way to get help without attracting a lot of attention.

When defendant got up to use the restroom, he told Sturges he would follow her if she left. Sturges remained at the bar but asked the bartender for her bill. She then wrote a note on the back of the receipt, indicating that defendant had threatened her.

Nicholas Stagnaro, the manager of the Brittania Arms, read Sturges's note. He told two of the security guards, Joe Anderson and Nicholas Lancaster, about the threat. Anderson and Stagnaro approached defendant and asked him to step outside with them. After speaking with defendant and giving him a "verbal warning," they allowed him to reenter the bar.

Back in the bar, defendant was looking at Sturges, "staring her down." Anderson and Stagnaro therefore told defendant, "it's time to call it a night" and asked him to leave. Defendant exited, but he became "agitated" once he was outside. He repeatedly told

Anderson to "come around the corner," saying "he had something for him." Lancaster told defendant to leave.

From about 15 feet away, defendant threw the opened Leatherman tool at Anderson and Lancaster. The tool went in between the two security guards, both of whom had to jump out of the way. The tool landed four buildings down from the Brittania Arms. Defendant then ran off.

### *B. Defense Case*

Detective Carlos Melo testified that he viewed two different videotapes prepared from the Brittania Arms's security cameras. Neither tape showed defendant throwing the tool, as both tapes stopped before that part of the incident.

Four people who worked with defendant and/or socialized with him outside of work testified to his non-violent character. None of the four had ever seen how defendant reacted after being rejected by a woman.

### *C. Procedural History*

Defendant was charged, by information, with two counts of criminal threat (§ 422; counts 1 & 2) and two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3 & 4). Count 1 charged defendant with making a threat to Sturges. Count 2 charged him with making a threat to Anderson. Count 3 charged defendant with assaulting Anderson. Count 4 charged him with assaulting Lancaster. The prosecutor moved to dismiss count 2 during trial, noting that Anderson had moved out of state and would not be testifying.

The jury returned its verdicts on January 13, 2012. In count 1, the jury found defendant not guilty of criminal threat but guilty of a lesser included offense: attempted criminal threat. The jury convicted defendant of assault with a deadly weapon (§ 245, subd. (a)(1)) as charged in counts 3 and 4.

Dkt. No. 15-12, pp. 2-4.

## II. DISCUSSION

### A. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1)

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
3

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409. The federal habeas court must presume to be correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, the California Supreme Court summarily denied Petitioner's petition for review.

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
4

United States District Court
Northern District of California

1  Dkt. No. 15-14. The California Court of Appeal addressed the claims in the instant petition. Dkt.
2  No. 15-12. The Court of Appeal thus was the highest court to have reviewed Petitioner's claims in
3  a reasoned decision, and accordingly it is the Court of Appeal's decision that this Court reviews
4  herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085,
5  1091-92 (9th Cir. 2005).

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, a federal habeas court must give a heightened level of deference to state court decisions. *See Hardy v. Cross*, 565 U.S. 65 (2011) (per curiam); *Harrington v. Richter*, 131 S. Ct. 770, 783-85 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id*. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claim.

### B. Claim and Analysis

Petitioner asserts a single ground of relief: that trial counsel's failure to object to evidence of his declined credit card denied him effective assistance of counsel. The Court of Appeal summarized the relevant procedural background as follows:

> The evidence about defendant's credit card came in through the testimony of Stagnaro, the manager of the Brittania Arms. The prosecutor asked Stagnaro how he was able to give the police identifying information about defendant. Stagnaro mentioned that defendant had "left his tab open with his – his credit card – was declined, I believe." The prosecutor then introduced a copy of the "credit card declined slip," along with a copy of defendant's bill. Stagnaro explained that defendant had opened a tab and left his credit card at the bar. After the incident, they had "swiped the card and it was declined." Stagnaro further explained that credit cards are typically declined for "insufficient funds" or because "something is wrong with the card." Defendant did not object to this evidence.

Dkt. No. 15-12, pp. 15.

The Court of Appeal rejected Petitioner's claim for ineffective assistance of counsel,

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
5

1    finding that Petitioner did not carry his burden of proving that he was prejudiced by counsel's

2    failure to object. The court reasoned as follows:

> Even assuming that reasonable trial counsel would have objected to Stagnaro's testimony about defendant's credit card being declined, defendant fails to explain how, "but for counsel's unprofessional error[], the result of the proceeding would have been different." (Strickland, supra, 466 U.S. at p. 694.) Having a credit card declined is not the type of damaging character evidence that can cause serious prejudice. (*Cf. People v. Albarran* (2007) 149 Cal.App.4th 214, 230 [certain "gang evidence was extremely and uniquely inflammatory, such that the prejudice arising from the jury's exposure to it could only have served to cloud their resolution of the issues"], fn. omitted; *People v. Parsons* (1984) 156 Cal.App.3d 1165, 1171 [evidence of a prior arrest "is not as prejudicial as evidence of a prior conviction"].) Defendant fails to explain how evidence that he may have had insufficient funds or a defective credit card was likely to affect the jury's view of the case. Under the circumstances, defendant has failed to "carry his burden of proving prejudice as a 'demonstrable reality.'" (*Williams, supra*, 44 Cal.3d at p. 937.)

Dkt. No. 15-12, pp. 16.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 201, 131 S. Ct. 1388, 1410-11, 179 L. Ed. 2d 557 (2011); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (same); *Premo v.*

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
6

*Moore*, 131 S. Ct. 733, 740 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.

Here, the Court of Appeal's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). Thus, the only question is whether the Court of Appeal made an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. Petitioner challenges the Court of Appeal's determination with respect to both the first and second prongs of *Strickland*. Dkt. No. 1.

Taking these in reverse order, the Court finds that, based on the record, the Court of Appeal reasonably determined that Petitioner had not shown that he was prejudiced by counsel's deficient performance. As the Court of Appeal correctly noted, a declined credit card is not the kind of damaging character evidence that could seriously prejudice a defendant. This is particularly true in light of the other evidence introduced at trial, including Sturges' and Stagnaro's testimony regarding Petitioner's attempted threat of Sturges and Lancaster's and Stagnaro's testimony that Petitioner threw a knife at Lancaster and Anderson. If anything, this evidence—not the declined credit card—would have more likely swayed the jury in their assessment of Petitioner's credibility and character.

Petitioner nevertheless contends that the declined credit card caused the jury to see him as a "deadbeat, wise guy, and generally nefarious individual" and that they could have reasonably confused this bad character with guilt. Dkt. No. 1, at m-3. However, Petitioner must prove "prejudice as a 'demonstrable reality,' not simply speculation as to the effect or errors or omissions of counsel." *People v. Williams*, 44 Cal. 3d 883, 937, 751 P.2d 395 (1988), *as modified*

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

7

*on denial of reh'g* (May 19, 1988). Petitioner's argument does not meet this bar. Petitioner does not explain how the declined credit card would have confused the jury into believing he was guilty or how the declined credit card—as opposed to the other evidence at trial—guided its conclusion. The only theory that Petitioner offers is that credibility—particularly his and Lancaster's—was critical at trial, and that the declined credit card could have hurt his. Dkt. No. 1, at m-3. However, this is too attenuated. As such, the Court of Appeal reasonably determined that Petitioner had not shown prejudice in this case.

Accordingly, because the Court of Appeal reasonably determined that Petitioner failed to establish at least one of the requirements for ineffective assistance of counsel, Petitioner is not entitled to habeas relief on this claim. The Court declines to reach Petitioner's arguments with respect to the first prong of *Strickland*.

## III. CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be DENIED. Further, a Certificate of Appealability is DENIED. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: May 29, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-01407-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
8